**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ANDRE L. E., | ) |
| | ) |
|           Plaintiff, | ) |
| | ) |
|     v. | )      1:22CV1014 |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
|         Defendant.[1] | ) |

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Andre L. E., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 7 (Plaintiff's Brief); Docket Entry 10 (Commissioner's

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief); Docket Entry 11 (Plaintiff's Reply)). For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 327-31), alleging a disability onset date of March 6, 2017 (see Tr. 327, 330). Upon denial of that application initially (Tr. 220-30, 245-48) and on reconsideration (Tr. 231-44, 252-59), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 35-36, 260-61). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 179-219.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 324-26), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since March 6, 2017, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: diabetes mellitus; stroke/lacunar infarct; frozen shoulder; and psoriasis.

_____

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 8 at 1.)

2

. . .

4.  [Plaintiff] does not have an impairment or
combination of impairments that meets or medically equals
the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional
capacity to perform a reduced range of medium
work . . . . [He] can lift and carry 50 pounds
occasionally and 25 pounds frequently. He can sit for
six hours in the eight-hour workday. He can stand or
walk for six hours in the eight-hour workday. He can
push and pull as much as he can lift and carry. [He] can
operate hand controls frequently with the bilateral
hands. He can frequently reach in all directions with
the bilateral upper extremities. He can handle items
frequently with the bilateral hands. He can frequently
finger and feel with the bilateral hands. [He] can climb
ladders, ropes, and scaffolds occasionally. He can
tolerate frequent exposure to unprotected heights and
moving mechanical parts. He can tolerate frequent
exposure to vibration.

. . .

6.  [Plaintiff] is capable of performing past relevant
work as a production supervisor. This work does not
require the performance of work-related activities
precluded by [Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs
that exist in significant numbers in the national economy
that [Plaintiff] also can perform, considering [his] age,
education, work experience, and residual functional
capacity.

. . .

3

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 6, 2017, through the date of this decision.

(Tr. 19-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months,'" id.
(quoting 42 U.S.C. § 423(d)(1)(A)).[3]   "To regularize the
adjudicative process, the Social Security Administration [('SSA')]
has . . . promulgated . . . detailed regulations incorporating
longstanding medical-vocational evaluation policies that take into
account a claimant's age, education, and work experience in
addition to [the claimant's] medical condition."  Id.  "These
regulations establish a 'sequential evaluation process' to
determine whether a claimant is disabled."  Id. (internal citations
omitted).

     This sequential evaluation process ("SEP") has up to five
steps:  "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
[('RFC')] to (4) perform [the claimant's] past work or (5) any
other work."  Albright v. Commissioner of Soc. Sec. Admin., 174

---

     [3] The Act "comprises two disability benefits programs.  [DIB] . . .
provides benefits to disabled persons who have contributed to the program while
employed.  The Supplemental Security Income Program . . . provides benefits to
indigent disabled persons.  The statutory definitions and the regulations . . .
for determining disability governing these two programs are, in all aspects
relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal
citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the

_____

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[6]

## B.  Assignment of Error

In Plaintiff's first and only issue on review, he argues that "[t]he ALJ erred in failing to explain the basis for not enforcing the subpoena the ALJ issued to [Plaintiff's long-term disability ('LTD')] carrier to obtain clinical examination findings and other pertinent information, preventing the decision from being supported by substantial evidence and prejudicing [Plaintiff] because the ALJ cited the lack of supportive examination findings as the basis for discounting the LTD examining physician's opinion." (Docket Entry 7 at 6 (bold font and block formatting omitted); see also Docket Entry 11 at 1-5.)  More specifically, Plaintiff notes that, "[o]n

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

October 28, 2021, [the] ALJ [] subpoenaed 'any and all documents related to the neurological examination [requested by Plaintiff's LTD carrier and] performed by Dr. Craig Du[B]ois on September 7, 2021, as well as any decisions made [by the LTD carrier] subsequent to Dr. Du[B]ois['s] examination with regard to [Plaintiff's] eligibility for [LTD] benefits'" (Docket Entry 7 at 8 (quoting Tr. 323)), and that, "[o]n November 2, 2021, [the LTD carrier] responded [by letter]" (id. (citing Tr. 1661)), and produced "one page of a form completed by Dr. DuBois on September 7, 2021" (id. (citing Tr. 1662)).[7] According to Plaintiff, the LTD carrier "failed to comply with the ALJ's subpoena by providing only one page of [Dr. DuBois's] medical examination checklist form without providing the actual visit notes created at the examination, the rest of the checklist form, or payment decisions regarding [Plaintiff's] LTD claim made subsequent to the examination." (Id. at 14 (stray comma omitted) (citing Tr. 1661-62).) Plaintiff contends that, "through his attorney, [he] advised the ALJ [by letter that Plaintiff's LTD carrier] 'd[id] not appear to have complied with the subpoena' and noted the [carrier's] response lacked a report from Dr. DuBois'[s] examination, lacked information

_____

[7] Dr. DuBois opined that Plaintiff could lift, carry, push, and pull up to ten pounds occasionally, never climb stairs or ladders, and never balance, stoop, kneel, crouch, crawl, or use foot controls. (Tr. 1662.) In a space for further elaboration on Plaintiff's functional impairment, Dr. DuBois wrote that Plaintiff "ha[d] stroke deficits affecting left side [and] causing deficits with strength, coordination, balance [and] also diabetic neuropathy cause[d] issues also [sic]." (Id.)

9

about functional abilities, and lacked documentation regarding [Plaintiff's] eligibility for LTD based on the report" (id. at 15 (citing Tr. 424 n.1)), but that the ALJ proceeded to issue a decision in which he "'f[ound] the functional capacity form of Dr. DuBois unpersuasive[ because t]here [we]re no clinic findings supporting [Dr. DuBois's] extreme limitations'" (id. at 10 (quoting Tr. 27)), and "denied [Plaintiff's] claim without notifying him the ALJ would not enforce the subpoena" (id. at 19 (citing Tr. 13-29)).[8]

In Plaintiff's view, his LTD carrier's "noncompliance with the subpoena triggered the ALJ's duty to consider whether . . . Dr. DuBois'[s] full examination and [the LTD carrier's] paperwork regarding the claim payment status remained 'reasonably necessary for the full presentation of the case'" (id. at 15 (citing Hearing,

_____

[8] While Plaintiff's request for review remained pending with the Appeals Council, his counsel sent the Appeals Council a letter contending that Plaintiff's LTD carrier "told [Plaintiff and his counsel] that [it] would send the [documentation listed in the subpoena] directly to the Appeals Council," but that "th[o]se documents [did not yet appear] in [Plaintiff's] electronic [claims] folder." (Tr. 425.) Plaintiff's counsel thus requested the Appeals Council to "issue a subpoena to get the documents that were not produced by [Plaintiff's LTD carrier]." (Id.) Although the record does not contain a subpoena issued by the Appeals Council to Plaintiff's LTD carrier, at some point, the Appeals Council received the first page of Dr. DuBois's checklist medical opinions form (Tr. 177), a letter to Plaintiff from the LTD carrier dated September 29, 2021, reflecting that Plaintiff's LTD benefits would continue (Tr. 37), and documents relating to the LTD carrier's processing of Plaintiff's LTD claim (Tr. 38-176). The first page of Dr. DuBois's checklist form reflects his opinions that Plaintiff could sit constantly, stand and walk occasionally, never reach overhead, occasionally reach in other directions, frequently engage in fine manipulation and grasping his right hand, occasionally engage in firm grasping with his left hand, and never engage in fine manipulation or simple grasping with his left hand. (See Tr. 177.) The Appeals Council acknowledged receipt of those additional documents from the LTD carrier, but "f[ound them] d[id] not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision." (Tr. 2.) Plaintiff did not challenge that ruling by the Appeals Council. (See Docket Entries 7, 11.)

Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-82)), but points out that "the ALJ did not provide [Plaintiff] with notice that [the ALJ] would not be enforcing the subpoena" or "explain in the written decision why, or if, he determined the subpoenaed information was not 'reasonably necessary for the full presentation of the case'" (id. at 16 (quoting HALLEX § I-2-5-82)). Plaintiff asserts that the ALJ's above-described errors "violated well-settled [] precedent [from the United States Court of Appeals for the Fourth Circuit] that ALJs must build an accurate and logical bridge between the evidence and the conclusions reached in the decision" (id. at 18 (citing Patterson v. Commissioner of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017), and Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016))), because "the ALJ [did not] explain his contradictory decisions determining that the subpoena was both reasonably necessary and unnecessary for the full presentation of the case" (id. at 17 (bold font and underscoring omitted); see also id. at 19 (citing Tucker v. Colvin, Civ. No. 16-1946, 2017 WL 2472528, at *1 (D. Md. June 8, 2017) (unpublished), for proposition that "ALJ should have notified [the] plaintiff of the deficiencies in her request [for a subpoena] and denied it on the record, rather than simply ignoring it")). Plaintiff further asserts that "[t]he ALJ's failure to follow the HALLEX procedures regarding notice and explanation for non-enforcement of an issued subpoena harmed [Plaintiff,] because . . . Dr. DuBois'[s] opinion

11

limited [Plaintiff], at most, to sedentary work, at which point the [M]edical[-V]ocational [G]uidelines would likely support a finding of disability as of [Plaintiff's] fiftieth birthday" (id. at 16 (citing Tr. 1662)), and "[t]he ALJ cited the absence of notes, findings, or supportive explanation from a clinical examination as the basis for discounting Dr. DuBois'[s] opinion" (id. at 17 (citing Tr. 27)). For the reasons explained in more detail below, Plaintiff's contentions lack merit.

Although an "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), the ALJ "is not required to act as [a] claimant's counsel," and "is entitled to assume that a claimant represented by counsel is making h[is] strongest case for benefits," Jason L. v. O'Malley, No. 3:23CV307, 2024 WL 1152405, at *11 (S.D.W. Va. Feb. 29, 2024) (unpublished) (internal quotation marks omitted), recommendation adopted, 2024 WL 1149282 (S.D.W. Va. Mar. 15, 2024) (unpublished). As part of that duty to develop the record, an ALJ "may, on his or her own initiative or at the request of a party, issue subpoenas for . . . the production of . . . documents that are material to an issue at the hearing," if the ALJ determines that such a subpoena qualifies as "reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) (emphasis added); see also HALLEX § I-2-5-78 (providing same standard for

issuance of subpoenas).  As other courts have recognized, "[t]h[at] language gives broad discretion to the ALJ to decide whether or not to issue a subpoena."  <u>Serrano v. Kijakazi</u>, Civ. No. 20-3985, 2021 WL 4477137, at *7 (E.D. Pa. Sept. 30, 2021) (unpublished); <u>see also</u> <u>Prince v. Berryhill</u>, No. 3:16CV175, 2017 WL 2872837, at *11 (E.D. Va. Jun. 19, 2017) (unpublished) ("Courts review an ALJ's decision whether to issue a subpoena under an abuse of discretion standard." (citing <u>Taylor v. Weinberger</u>, 528 F.2d 1153, 1156 (4th Cir. 1975)), <u>recommendation adopted</u>, 2017 WL 2872421 (E.D. Va. Jul. 5, 2017) (unpublished).

Further, although the Commissioner's regulations do not address enforcement of an ALJ's subpoena, HALLEX provides as follows:

> If an individual refuses or fails to comply with a subpoena, the [ALJ] will consider any change in circumstance since issuing the subpoena and re-evaluate whether the evidence or facts requested are reasonably necessary for the full presentation of the case.  If the ALJ finds the information is reasonably necessary for the full presentation of the case, he or she will prepare a memorandum to the Office of the General Counsel (OGC) Regional Chief Counsel, requesting enforcement of the subpoena.

HALLEX § I-2-5-82; <u>see also</u> <u>Cash v. Kijakazi</u>, No. 21CV1105, 2023 WL 8719993, at *13 (S.D.N.Y. Mar. 22, 2023) (unpublished) ("[B]oth the issuance <u>and the enforcement</u> of subpoenas are committed to the ALJ's discretion." (emphasis added)), <u>objections pending</u> (S.D.N.Y. May 2, 2023).  Here, Plaintiff has failed to show that the ALJ

abused his discretion in his handling of the subpoena to Plaintiff's LTD carrier for three reasons.

First and foremost, Plaintiff has failed to demonstrate that, after receiving the LTD carrier's response to the subpoena, he actually requested the ALJ to enforce the subpoena. Plaintiff's counsel sent the following letter to the ALJ on December 2, 2021:

> Dear [ALJ]:
>
> This firm has been retained to represent [Plaintiff] in his claim for [DIB]. . . .
>
> A hearing was held on July 22, 2021. After the hearing, [Plaintiff's LTD] carrier . . . referred him to a neurological examination by Dr. Craig DuBois. In response to a subpoena, [the LTD carrier] provided one page of the Attending Physician Statement from Dr. DuBois.[1] That one page contains severe limitations for [Plaintiff] in light of the residuals from a stroke and diabetic peripheral neuropathy. Dr. DuBois'[s] opinions are compelling because he is a neurologist, conducted an examination of [Plaintiff], and was hired by [the LTD carrier] to perform the examination. All of these factors make Dr. DuBois'[s] opinions very credible and compelling.
>
> Basted on Dr. DuBois'[s] limitations, we would argue that [Plaintiff] is limited to sedentary exertion and perhaps even less than sedentary exertion.[2] Regardless, [Plaintiff] is disabled at sedentary exertion given his age and past relevant work.
>
> <u>Thank you for issuing the subpoena to obtain the documents from [the LTD carrier]</u>. Dr. DuBois'[s] opinions are compelling and critical to this case.
>
> Sincerely,
>
> [Plaintiff's hearing-level counsel]
>
> ---
>
> [1] <u>[Plaintiff's LTD carrier] does not appear to have complied with the subpoena</u>. The subpoena requested all documents related to the neurological examination

performed by Dr. Craig DuBois as well as any documents related to a decision on [Plaintiff's] eligibility for [LTD] benefits. Dr. DuBois <u>almost certainly</u> produced a lengthy report from his examination which contained his findings from the examination and he <u>most likely</u> responded to a series of questions from [the LTD carrier] about [Plaintiff's] functional abilities. None of this information was produced. [The LTD carrier] also did not provide documentation regarding a decision on [Plaintiff's] eligibility for [LTD] benefits. According to [Plaintiff], [his LTD carrier] advised him that his [LTD] disability benefits would be continued.

[2] If we had Dr. DuBois'[s] opinions on [Plaintiff's] ability to stand and/or walk as well as his ability to use his arms for reaching and handling, there is a good chance that [Plaintiff] would be limited to less than sedentary exertion.

(Tr. 424 (internal parenthetical citation omitted) (emphasis added).)

As the above-quoted language makes clear, that letter serves primarily as post-hearing argument on the probative value of Dr. DuBois's opinions, as the <u>body</u> of the letter both discusses the impact of Dr. DuBois's opinions on Plaintiff's DIB claim and thanks the ALJ for issuing the subpoena. (See <u>id.</u>) Plaintiff's hearing counsel relegated to a <u>footnote</u> his observation that the LTD carrier "d[id] not <u>appear</u> to have complied with the subpoena" (<u>id.</u> (emphasis added)), and then entirely failed to request that the ALJ 1) enforce the existing subpoena, 2) issue a new subpoena to the LTD carrier or to Dr. DuBois directly, or 3) hold the record open so that Plaintiff could take further steps to obtain the documents he believed the LTD carrier failed to produce (see <u>id.</u>). That footnoted verbiage falls far short of a formal request that the ALJ

15

enforce the subpoena, see Prince, 2017 WL 2872837, at *13 (holding that counsel's letter to ALJ, after initial subpoena did not yield documents, which provided contact information for pharmaceutical company "should [the ALJ] wish to subpoena" the company, failed "to directly request that the ALJ issue a subpoena for [the company's] records"), and Plaintiff points to no authority that required the ALJ to sua sponte request enforcement of the subpoena, see Cash, 2023 WL 8719993, at *14 ("[T]he ALJ did not err in failing to follow up the requested subpoenas . . . with a sua sponte request, to the OGC, to enforce them."). Moreover, as Plaintiff failed to request the ALJ to enforce the subpoena, the ALJ neither made implicitly contradictory findings that the subpoena qualified as "both reasonably necessary and unnecessary for the full presentation of the case" (Docket Entry 7 at 17 (bold font and underscoring omitted)) in violation of Monroe and Patterson, nor "'simply ignor[ed]'" a request to enforce the subpoena without "'notif[ying P]laintiff of the deficiencies in his request and den[ying] it on the record'" (id. at 19 (quoting Tucker, 2017 WL 2472528, at *1)).

Second, as the Commissioner's regulations did not place any obligations on the ALJ regarding enforcement of the subpoena, see 20 C.F.R. §§ 404.950(d), 416.1450(d), Plaintiff relies exclusively on Section I-2-5-82 of the HALLEX, an SSA internal procedural manual which lacks the force of law, see Christensen v. Harris

16

Cty., 529 U.S. 576, 587 (2000) (finding that agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines . . . lack the force of law"); Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (holding that SSA's Claims Manual "has no legal force," and does not bind the agency), to argue that the ALJ labored under a duty "to either enforce the subpoena or explain the basis for not enforcing the subpoena" (Docket Entry 11 at 4). Although Plaintiff acknowledges that "the HALLEX does not, in and of itself, create judicially-enforceable rights" (id. at 3), he maintains that "a violation of the HALLEX may be reversible error where [] Plaintiff can show he was harmed by the error" (id. (citing Way v. Astrue, 789 F. Supp. 2d 652, 665 (D.S.C. 2011))). The district court in Way found "a circuit split as to whether the Commissioner is bound by HALLEX," Way, 780 F. Supp. 2d at 665 (citing Moore v. Apfel 216 F.3d 864, 868-69 (9th Cir. 2000) (ruling HALLEX "does not prescribe substantive rules and therefore does not carry the force and effect of law"), and Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (holding that, "[i]f prejudice results from a HALLEX violation, the result cannot stand")), as well as that "[t]he Fourth Circuit ha[d] not ruled on th[at] issue," id. Ultimately, the Way court determined that, "as in Newton, the court should consider whether the Commissioner's failure to follow HALLEX prejudiced a claimant who has raised the issue." Id.

17

This Court, however, has not cited <u>Newton</u> or <u>Way</u> in order to find that a showing of prejudice arising out of an ALJ's violation of a HALLEX provision justifies remand, and, in fact, has recently cited <u>Moore</u>'s holding that HALLEX "d[id] not carry the force and effect of law," <u>Katerina M. L. v. O'Malley</u>, No. 1:22CV932, 2024 WL 110682, at *6 (M.D.N.C. Jan. 10, 2024) (citing <u>Moore</u>, 216 F.3d at 868 (ellipses omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Feb. 28, 2024) (Biggs, J.). Thus, even if Plaintiff had expressly requested the ALJ to enforce the subpoena to Plaintiff's LTD carrier (which, as discussed above, he did not), the ALJ's failure to follow the enforcement requirements of Section I-2-5-82 of the HALLEX does not provide the Court with a judicially enforceable basis for remand.

Third, Plaintiff relies on improper speculation to argue that "enforcement of the subpoena [to his LTD carrier] would have provided evidence of clinical examination findings supporting Dr. DuBois'[s] disabling opinions." (Docket Entry 11 at 3; <u>see also</u> Docket Entry 7 at 8 (quoting Plaintiff's counsel's letter to ALJ after LTD carrier's response to subpoena contending that "'Dr. DuBois <u>almost certainly</u> produced a lengthy report from his examination and he <u>most likely</u> responded to a series of questions from [the LTD carrier] about [Plaintiff's] functional abilities.'" (quoting Tr. 424 n.1) (emphasis added)).) Notably, Plaintiff did not offer the Court <u>any</u> basis for his belief that Dr. DuBois

18

"'produced a lengthy report from his examination'" (Docket Entry 7 at 8 (quoting Tr. 424 n.1)), and the circumstances surrounding Dr. DuBois's completion of the form opinion do not, standing alone, suggest the existence of such a report. Significantly, Dr. DuBois served as a one-time, consultative examiner requested by Plaintiff's LTD carrier to examine Plaintiff for the purpose of determining his continuing eligibility for LTD benefits, and, as such, Dr. DuBois did not establish a <u>treatment</u> relationship with Plaintiff. Moreover, Dr. DuBois filled out a form expressly provided by the LTD carrier and answered all of the form's questions regarding Plaintiff's functional capabilities. (Tr. 177-78, 1662.) Furthermore, the LTD carrier (apparently) continued Plaintiff's LTD benefits on the basis of Dr. DuBois's opinions (<u>see</u> Tr. 37), and neither represented that it needed additional clinical findings or other information from Dr. DuBois to determine Plaintiff's LTD eligibility (<u>see</u> <u>id.</u>), nor indicated that such additional clinical findings existed that it chose to withhold from production under the subpoena (<u>see</u> Tr. 1661). Lastly, despite Plaintiff's belief that Dr. DuBois likely would have produced a lengthy report of his clinical findings arising out of his examination of Plaintiff, the record does not reflect that he made any attempt to obtain the examination documents directly from Dr. DuBois, whose contact information appears on the form (<u>see</u> Tr. 178, 1662), or that he requested the ALJ to subpoena Dr. DuBois

19

directly. (See Docket Entries 7, 11.) Under such circumstances, even if Plaintiff could show 1) he requested the ALJ to enforce the subpoena, and 2) the ALJ's failure to enforce the subpoena violated a judicially enforceable provision of law, neither of which Plaintiff has done, Plaintiff still could not demonstrate that the ALJ's actions prejudiced Plaintiff, as his conjecture that Dr. DuBois's clinical findings might exist do not suffice to establish prejudice. See Ogletree v. Colvin, No. 5:12CV389, 2013 WL 6169161, at *11 (M.D. Ga. Nov. 25, 2013) (unpublished) (rejecting the plaintiff's argument that ALJ erred by failing to enforce subpoenas to mental health provider, where "[the p]laintiff neither claim[ed] with certainty that other records exist[ed], nor indicate[d] what information those other records might contain," and holding that "[the p]laintiff's bare speculation [wa]s not enough to show that the ALJ either exceeded her discretion, or that she did so in a way that prejudiced [the p]laintiff").

In short, Plaintiff's first and only issue on review fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 27, 2024

21